**Bernard Jolles**, OSB #63939
berniej@jollesbernstein.com
**Candice Rutter**, OSB #02520
candicer@jollesbernstein.com
JOLLES & BERNSTEIN, P.C.
721 S.W. Oak Street, 2nd Floor
Portland, Oregon 97205-3791
Telephone: 503.228.6474
Facsimile: 503.228.0836
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GLENN H. SONSTENG, Personal Representative of the Estate of EDNA M. SONSTENG, Deceased,** | Civil No. 2:06-CV-00476-SU |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT** |
| v. | |
| **THE DOMINICAN SISTERS OF ONTARIO, INC.**, an Oregon non-profit corporation, dba **HOLY ROSARY MEDICAL CENTER; JOSEPH J. BOYLE, M.D.**, and **FRANK J. SPOKAS, M.D.**, | **REQUEST FOR TELEPHONIC ORAL ARGUMENT** |
| Defendants. | |

Plaintiff responds to the motions of all defendants to dismiss his amended

complaint as follows:

Defendants rely on Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

Page 1 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS
     TO DISMISS AMENDED COMPLAINT

in support of the claim which would entitle relief.  *See, Strother v. S. Cal. Permanente Medical Group*, 79 F.3d 859 (9th Cir. 1996); *See also, Conley v. Gibson*,  355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d (1957).

Because of the similarity of the motions made by the three defendants, plaintiff will address the overlapping theories together.  Each supplemental point made by each defendants' motion will also be addressed within the context of the each motions.

## MOTION 1

### PLAINTIFF'S AMENDED COMPLAINT PROPERLY STATES A SURVIVAL CLAIM AND A WRONGFUL DEATH ACTION.

Plaintiff's amended complaint properly states a survival claim for the negligence of all three defendants, as well as a wrongful death claim.  These are essentially alternative causes of actions; therefore, neither claim should be dismissed.  Defendants argue that, because plaintiff's complaint claims "the negligence of the defendants caused the death of the decedent," this is a wrongful death claim and not a survival claim.  Boyle Memo 1-4; HRMC Memo 1-2; Spokas Memo 2-4.  This limitation is not only an improper reading of the text of the statutes, but also runs counter to legislative intent.

In his complaint, a copy of which is attached as Exhibit 1, plaintiff has alleged a number of specifications that support a claim of negligence[1] (Ex. 1, ¶¶ 5-7.)  Because of this

---

[1]Plaintiff, alleges that all three defendants, Defendant [Holy Rosary Medical Center] HRMC, BOYLE, and SPOKAS, were negligent in at least one of the following particulars:
  a.    Failed to read or evaluate decedent's chest x-ray taken on February 25, 2000;
  b.    Failed to inform other defendants of the results and findings on decedent's chest x-ray;
  c.    Failed to obtain a radiological consultation to further evaluate decedent's chest x-ray;

negligence, plaintiff's decedent did not discover the tumor until it had almost quadrupled in size, had metastasized, and her condition was terminal. "In addition, decedent was required to undergo more extensive chemotherapy and other treatment, and sustained diarrhea and vomiting as a direct and proximate result thereof." Decedent suffered shock and mental anguish. Ex. 1, ¶ 8.

While it is true that plaintiff has alleged the defendants' negligence caused the death of the decedent, their negligence also caused her personal injury prior to death and also caused her treatment to be far more extensive. Due to that increased treatment, plaintiff suffered more extensively while she was alive. This survival action against defendants would have continued upon her death under ORS 30.075.[2]

Defendants' argument that once a wrongful death claim is added, the survival action is immediately dismissed defies logic. If the jury decided in this case that the negligence of the three defendants did not cause plaintiff's death, she should still have a claim for the additional

---

| | |
|---|---|
| d. | failed to follow up in any way with CT scans and other tests to further evaluate decedent's chest x-ray; |
| e. | Failed to advise, inform, or in any way discuss with decedent, the findings in her chest x-ray; |
| f. | Failed to obtain an oncological consultation in order to follow up and treat the mass; |
| g. | Impliedly represented to decedent that her chest x-ray was normal; |
| h. | Failed to treat decedent's tumor; |
| i. | Failed to surgically remove decedent's tumor; and |
| j. | Failed to advise decedent to seek further treatment and evaluation of her tumor. Ex. 1, ¶¶ 5-7. |

[2]Under ORS 30.075, "[c]auses of action arising out of injuries to a person, caused by the wrongful act or omission of another, shall not abate upon the death of the injured person, and the personal representative of the decedent may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission." ORS 30.075(1).

Page 3 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

treatment, and the pain and suffering that delayed treatment caused. However, if the court were

to follow defendants' argument to its logical conclusion, plaintiff's survival action would be barred

because the personal representative filed a wrongful death action. Clearly, this result could not

have been intended by the legislature. Furthermore, the Federal Rules specifically allow for

alternative or even inconsistent claims. Fed. R. Civ. P. 8(e)(2).

Additionally, this approach would result in discouraging a personal representative

who did not have a "slam dunk" wrongful death case from making that claim out of fear that the

entire claim would be lost. Defendants' position is inconsistent with the statute.

The right to maintain both causes of action has been acknowledged in Oregon. *See,*

*Doe v. American Red Cross*, 128 Or. App. 38, 874 P.2d 828 (1994); *See also, Roe v. Pierce*,

102 Or. App. 152, 794 P.2d 4 (1990), vacated on jurisdictional grounds, 313 Or. 228, 832 P.2d

1226 (1992). In *Roe*, the wife of the decedent filed a separate wrongful death action after her

husband died as a result of the medical malpractice for which he had previously filed a claim. Id.

at 154. The defendants in that case contended that "ORS 30.075 applies only in cases where the

injured person died of causes unrelated to those for which a claim can be made under ORS 30.020,

because the legislature did not intend that ORS 30.075 and ORS 30.020 should overlap." *Id.* at

157.

Even though the defendants argued that there would be conflict because of the

slightly different statutes of limitations and different procedural rules, the court concluded there

was no ambiguity that required looking at the legislative history. *Id.* The court reasoned that

"ORS 30.020(3) provides that recovery under ORS 30.020 is reduced by any recovery under ORS

30.075. That provision is consistent with the proposition that a claim for damages for a decedent's

Page 4 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS
TO DISMISS AMENDED COMPLAINT

pain and suffering can be maintained under either statue and that the legislature simply intended to prevent a double recovery for damages incurred between the time of injury and death." *Id.* Thus, the court allowed both actions to be maintained.

Also, in *Doe*, husband-plaintiff contracted AIDS during a blood transfusion during surgery. He filed a claim for negligence against Red Cross, and later died from pneumonia associated with the disease. *Id.* 40-41. The wife was then appointed the personal representative of her husband's estate, and she filed an amended complaint to allege that her husband had died; the complaint continued to allege the claim for negligence. *Id.* at 41. Plaintiff argued that ORS 30.020 applied and defendant argued that the action was not commenced under ORS 30.020, but rather, continued the action that was filed during her husband's life, pursuant to ORS 30.075. *Id.* at 41.

The court held that the wrongful death was not a new claim, but, rather, continued the action commenced by plaintiff and her husband before he died, and simply added damages for wrongful death. *Id.* at 42. Thus, the court held the action was continued by the wife as the personal representative of her husband under ORS 30.075. *Id.*

Similarly, in this case, decedent filed a case against all three defendants prior to her death.. When decedent died, the original claim was rightfully continued by her personal representative under ORS 30.075. At that time, the complaint was also amended to allege additional damages for wrongful death. Thus, the case is both a survival and a wrongful death action.

Obviously, should plaintiff prevail on the wrongful death claim, the survival claim would be subsumed in that claim. While none of the defendants argue this point, plaintiff concedes

that should he prevail on the wrongful death claim, the survival claim is subsumed by the wrongful

death claim, in keeping with the clear language of ORS 30.075(3):

> "If an action for wrongful death under ORS 30.020 is brought, recovery of damages
> for disability, pain, suffering, and loss of income during the period between injury
> to the decedent and the resulting death of the decedent may only be *recovered in
> the wrongful death action . . .*" Emphasis added.

Defendant SPOKAS reads this language to mean that damages for pain and

suffering and loss of income may only be claimed in the wrongful death action. Spokas Memo 3.

SPOKAS is incorrect. The logical reading is, should the plaintiff prevail on the wrongful death

claim, damages for disability, pain, suffering, and loss of income before death are included in the

death claim. Should the plaintiff not prevail on the death claim, there is no basis to deny plaintiff

the right to continue the survival claim as specifically set forth in ORS 30.075.

HRMC argues that ORS 30.075 was amended in 1995 to "resolve the problem that

existed where actions under the survival statute were being brought in conjunction with wrongful

death claims as a means of recovering attorney fees." HRMC Memo 3. However, this is not the

case in this situation. Plaintiff brought her negligence claims well before she died. The survival

claim was not brought in conjunction with the wrongful death claim, which is what the statute's

language was meant to prevent.

Furthermore, nowhere in the statute does it say that the filing of a wrongful death

action automatically eliminates the survival action. The court in *Roe* discussed this exact

argument. *Roe*, 102 Or. at 157. The court noted that neither statute contained an express

limitation of one type of claim over another, and stated that if the legislature intended differently

they could have said so. *Id.* The legislature was aware of the decision in *Roe* when it amended

Page 6 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS
TO DISMISS AMENDED COMPLAINT

the statute, and it did not change *Roe.*

Finally, defendants assert the survival claim must be dismissed because of Oregon's cap on non-economic damages. However, under the federal rules, plaintiff is not required to plead the amount of her claim, and, therefore, the prayer for each claim is irrelevant.. Furthermore, in this motion to dismiss, the only issue is whether a survival action exists. Defendants have not shown how the cap is relevant to this issue.

The amount of damages to which plaintiff is entitled presents a completely different issue and can be decided after verdict. The question of the constitutionality of the wrongful death cap is presently before the Oregon Supreme Court. *See, Hughes v. Peacehealth*, 204 Or. App. 614, 131 P.3d 798 (2006), *rev. granted*, 341 Or. 140. That issue may well be determined before this case is decided. Under these circumstances, this court should not prematurely rule on a question of state law in this diversity case.

Defendants' motion to dismiss should be denied.

## MOTION 2

### PLAINTIFF'S AMENDED COMPLAINT ALLEGES A MISREPRESENTATION SUFFICIENT TO TOLL THE STATUTE OF ULTIMATE REPOSE

After a lengthy analysis of the applicable statute of limitations and statute of repose established by ORS 30.020 and ORS 12.110(4), BOYLE concludes "if plaintiff proves misrepresentation, the applicable limitation period is two years from the date of discovery of the misrepresentation, January 2008, and the wrongful death action was timely filed." Boyle Memo 4-6. Plaintiff agrees with this analysis.

BOYLE and HRMC claim that plaintiff's allegation of a misrepresentation is

insufficient to toll the statute of limitation, because it is "contemporaneous" with the negligence that constitutes the gravamen of plaintiff's claim. Boyle Memo 6; HRMC Memo 4. In order to deal with that contention, it is important to consider exactly what plaintiff alleges defendants misrepresented.

First, a misrepresentation which tolls the statute need not be fraudulent or deceitful. *Duncan v. Augter*, 286 Or. 723, 732, 596 P.2d 555 (1979). It need not even be an affirmative statement. *Skuffeeda v. St. Vincent Hospital and Medical Center*, 77 Or. App. 477, 483, n 3, 714 P2d 235 (1986), citations omitted. An implied misrepresentation is sufficient. *Id.* Here all three defendants made the following assertion: "We have read your x-ray and there is nothing there that you need to know about -- it is normal." To be sure, they made this representation by implication, but it was just as false and just as misleading to plaintiff as if they had said it directly and affirmatively.

Defendants BOYLE and HRMC do not make clear what they believe is the misrepresentation, but they claim, nevertheless, that it was "contemporaneous." It was not. In *Jones v. Salem Hospital*, 93 Or. App. 252, 762 P.2d 303 (1988), the court said,

> "The contexts in which the court used 'contemporaneous' imply that the negligence and the physician's representations must be related-temporally and otherwise-in such a way that the representation simply espouses a satisfactory performance before the physician can or should have any reason to doubt its success." *Id.* at 265-66

The negligence charged with respect to all three defendants has nothing to do with taking an improper x-ray or failing to read that x-ray in connection with decedent's gallbladder surgery. It has to do with failure to treat and diagnose her cancer.

All defendants are deemed to have repeated the misrepresentation when decedent

was discharged from the hospital. "Furthermore, because of the special nature of the doctor-patient relationship, a doctor has an affirmative duty to disclose the results of diagnostic tests to his patient." *Skuffeeda*, 77 Or. App. 483, n. 3. Certainly, these defendants are all deemed to know the contents of their x-ray at the time of discharge. The failure to disclose at discharge is a non-contemporaneous misrepresentation that tolls the statute.

This is supported by the case law. In *Jones, supra,* the court reviews some of the history of ORS 12.110(4). *Id.* at 259-61. The court said the plaintiff does not have to prove the defendant deliberately misled him by an explicit or *implicit* representation, but only that representation misled the plaintiff. *Id.* at 259-60 . This is because the purpose of the statute is to allow a plaintiff a belated malpractice action because the delay is excusable. *Id.* at 260. The one condition was that an "innocent contemporaneous representation must misrepresent something other than the careful performance or the success of the very treatment or operation whose failure is the basis of the plaintiff's subsequent complaint." *Id.*

In *Jones*, the court found that the plaintiff had pleaded a sufficient misrepresentation to survive a motion to dismiss with respect to some of the defendants. *Id.* at 263. First, the court determined that the nondisclosure or alleged statement that "diagnostic tests after birth had demonstrated plaintiff to be experiencing respiratory acidosis" could constitute a "misleading representation." *Id.* at 264. The court reasoned that the "nondisclosure about the diagnostic tests and their results do not bear on the gravamen of the asserted initial negligence, i.e. failing to provide oxygen and to obtain samples 'promptly after birth' to assess plaintiff's arterial blood gases." Id.

This is similar to decedent's situation where x-rays were taken to determine her

condition on February 24, 2000. Defendants failed to disclose the results of those tests. However, the gravamen of plaintiff's claim of negligence is that defendants failed to properly provide the necessary treatment for her cancer which ultimately led to her death.

In *Jones*, the child suffered brain damage during or shortly after delivery, and, while the defendants attributed this to the child's premature birth, the parents contended that an amniocentesis procedure performed by one of the obstetricians punctured the child's umbilical cord, causing significant bleeding. Considering the pediatricians' statements that the child's developmental delay was the result of prematurity alone and would eventually resolve, the court applied the rule that representations contemporaneous with the alleged negligence that went to the gravamen of the patient's claims did not constitute misleading representations under the statute. *Id.* at 264. Since a finding that the representations were not contemporaneous with the alleged negligence was supportable, the court reasoned, these representations might constitute "misleading representations" under the statute. *Id.*

Just as in this case, the implied representation that decedent's test results were not abnormal was not made contemporaneously with her treatment for her gallbladder. Decedent underwent treatment for her gallbladder, but the failure to review and disclose the results of the x-rays, and provide necessary treatment, were not contemporaneous with her gallbladder treatment. The defendants correctly diagnosed her gallbladder condition, but failed, during and after that procedure, to make her aware of her cancer.

Similarly in *Skuffeeda, supra*, the plaintiff alleged that the defendant doctors had made "misleading representations to him that tolled the statute [because] . . . although defendant doctors should have known of the presence of the screw, they kept him from discovering their

negligence when they failed to tell him of the screw and falsely represented to him that the x-rays showed nothing abnormal." *Id.* at 484. Defendant BOYLE acknowledges that "[t]he participation by a physician in a patient's discharge from the hospital constitutes a representation that x-rays which were taken during the hospital stay showed nothing abnormal." Boyle Memo 7, citing *Skuffeeda v. St. Vincent Hospital*, 77 Or. App. 477, 483 n. 4, *rev den* 301 Or. 240 (1986).

In the current case, the defendants should have known of the presence of the tumor in the x-ray. They kept decedent from discovering that fact when they failed to tell her of the tumor and impliedly represented that the x-rays showed nothing abnormal when they did not discuss any problems with her.

The court in *Jones* stated that the purpose of the statute is to "give the misinformed patient additional time to sue, but only to the extent that the defendant was responsible for the misinformation." *Id.* at 259 (citing *Duncan v. Augter*, 286 Or .723, 730, 596 P.2d 555 (1979)). This is true even if the misrepresentation is innocent, so long as it was more than the assurance of the successful completion of the operation. *Id.* at 259-60.

Denying defendants' motions is in keeping with the spirit of the law. Here, the patient went in for treatment and, during the course of such treatment, defendants administered certain diagnostic tests. The evidence will show the patient was not told anything negative regarding those tests from any of her treating physicians. The patient believed the tests were normal and relied on the silence of the doctors as proof that she did not need further treatment. Due to that reliance, she did not seek treatment until the tumor had quadrupled in size and had metastasized. That reliance was justified given the trust patients put in their doctors to review diagnostic tests and convey that information. Defendants should not now be allowed to dismiss

Page 11 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

plaintiff's claim because they impliedly misrepresented that she did not need further treatment.

The representation alleged by plaintiff is sufficient to toll the statute of ultimate repose as to all three defendants. Defendants' motions to dismiss Count I should be denied.

### MOTION 3

### THE SECOND COUNT OF PLAINTIFF'S AMENDED COMPLAINT WAS TIMELY FILED AND IS A SEPARATE CLAIM FOR NEGLIGENCE

The second count of plaintiff's amended complaint alleges that all three defendants received further notice of the existence and findings of the x-rays, and that they failed to call these findings to the decedent's attention. This second chance to review the x-rays in July of 2002 occurred because of a second medical procedure, separate and distinct from the original procedure. At that time, all three defendants had the opportunity to review the x-rays and inform the decedent of her condition, but they did not do so. For a second time, decedent was misled into believing that the x-rays were normal.

This was not just a continuation of care. Decedent returned to HRMC because of a second illness, a breast-mass biopsy. This was a separate condition that equally warranted review of the previous x-rays. Once again, defendants did not conduct such a review and decedent's condition went undiagnosed.

Defendant SPOKAS cites *Ubrick v. Suburban Medical Clinic*, 141 Or. App. 452, 918 P.2d 453 (1996) in support of his argument that the failure of defendants to make decedent aware of her cancer in 2002 was simply continuing treatment and, therefore, does not extend the statute of limitations or ultimate repose. Spokas Memo 6. However, *Ubrick* makes it clear that the "triggering event for the five-year period of ultimate repose is 'the date of the treatment,

omission or operation upon which the action is based.'" *Id.* at 456.  There are two separate acts of

negligence in the case at bar, and, therefore, two triggering events: (1) defendants initially

misinformed decedent of her conditions in 2000; and, (2) they then had a second opportunity to

review her records and inform her in 2002 and they failed to do so.  These two separate acts of

negligence form the basis of her claim, and each establish a triggering event.

Defendants' motions to dismiss Count II should be denied.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss should be denied on all

counts.

Dated:  January 8, 2007.

JOLLES & BERNSTEIN, P.C.

Bernard Jolles, OSB #63039
Candice Rutter, OSB #02520
Attorneys for Plaintiff

Bernard Jolles, OSB #63939
berniej@jollesbernstein.com
JOLLES & BERNSTEIN, P.C.
721 S.W. Oak Street, 2nd Floor
Portland, Oregon 97205-3791
Telephone: 503.228.6474
Facsimile: 503.228.0836
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GLENN H. SONSTENG, Personal Representative of the Estate of EDNA M. SONSTENG, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE DOMINICAN SISTERS OF ONTARIO, INC., an Oregon non-profit corporation, dba **HOLY ROSARY MEDICAL CENTER; JOSEPH J. BOYLE, M.D.,** and **FRANK J. SPOKAS, M.D.,**<br><br>Defendants. | Civil No. 2:06-CV-00476-SU<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(MEDICAL NEGLIGENCE – SURVIVAL AND WRONGFUL DEATH) |

Pursuant to order of the court, plaintiff files her amended complaint and alleges:

1.

On or about July 5, 2006, during the pendency of this action, EDNA M.

SONSTENG died as a result of the negligence of the defendants herein. Her death has been

EXHIBIT _____/_____
PAGE __/__ OF __9__

suggested upon the record and, based upon plaintiff's motion to substitute plaintiff's personal representative, the court, on September 12, 2006, ordered that the personal representative be substituted as the party plaintiff, and the action should proceed.

## PARTIES

In appropriate proceedings heretofore had in the District Court of the Third Judicial District of the State of Idaho for the County of Payette, GLENN HARLON SONSTENG was duly appointed Personal Representative of the Estate of EDNA MARIE SONSTENG, Deceased, and brings this action on behalf of the heirs and beneficiaries of decedent's estate.

Plaintiff is a resident and citizen of the State of Idaho.

Defendant, THE DOMINICAN SISTERS OF ONTARIO, INC., an Oregon non-profit corporation, dba HOLY ROSARY MEDICAL CENTER ("HRMC"), operates a hospital in Ontario, Oregon, and its principal place of business is located in Ontario, Oregon.

Defendants JOSEPH J. BOYLE, M.D. ("BOYLE") and FRANK J. SPOKAS, M.D. ("SPOKAS"), are citizens and residents of the State of Oregon, licensed to practice medicine within the State of Oregon.

## JURISDICTION

Diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. The court has jurisdiction pursuant to 28 U.S.C. § 1332a.

\* \* \*

\* \* \*

\* \* \*

EXHIBIT _____ / _____
PAGE ___ 2 __ OF __ 7 ___

# FACTUAL ALLEGATIONS

## COUNT I

## (NEGLIGENCE - STATUTE OF LIMITATIONS
## TOLLED BY MISLEADING MISREPRESENTATION)

2.

At all material times, HRMC was and is now a duly-licensed hospital holding itself

out to the public as performing hospital services, including the operation of an emergency room.

At all material times, defendant BOYLE was and is a duly-licensed emergency

room physician employed at HRMC in its emergency room. He was, at all material times, acting

as the apparent agent of defendant HRMC.

At all material times, defendant SPOKAS was and is a duly-licensed physician and

surgeon in the State of Oregon.

3.

On or about February 24, 2000, decedent was admitted to the Emergency Room at

HRMC with abdominal pain and gastrointestinal symptoms. She came under the care of defendant

BOYLE who evaluated  and ordered a chest x-ray, among other tests, including an ultrasound.

Defendant BOYLE, acting on behalf of HRMC, then referred decedent to defendant SPOKAS who

diagnosed acute cholecystitis and prescribed a laparoscopic cholecystectomy.  Decedent was

discharged the following day

4.

Because of the negligence of all three defendants, combining and concurring, they

failed to read and evaluate the chest x-ray they had ordered, and, as a result, misleadingly

Page 3 - AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL . . .

EXHIBIT _____ /
PAGE ___3_ OF ___9_

impliedly represented to decedent that her chest x-ray was normal and had no abnormal findings. In truth and in fact, the x-ray showed "a 3 cm pleural-based mass in the left subapical region with associated evidence of mediastinal and left hilar adenopathy. Recommend CT of the chest for further evaluation." Despite this finding, the defendants, and each of them, failed to read or evaluate the x-ray or in any way further evaluate the mass referred to. The mass was, in fact, a malignant tumor and, because of the negligence of all three defendants, as hereinafter alleged, together with their misleading misrepresentations after the chest x-ray was taken, decedent did not discover, and could not have discovered, the tumor and her cancerous condition until no sooner than January of 2006. Defendants continued to misleadingly misrepresent the findings in decedent's chest x-ray during her post-operative care. By the time decedent discovered the tumor, it had grown and metastasized, and decedent's condition was terminal and, in fact, died as a direct and proximate result of the negligence of the defendants as alleged on July 4, 2006, all to her non-economic damage as hereinafter set forth.

5.

Defendant HRMC, acting through its agents and employees, was negligent in at least one of the following particulars:

a.   Failed to read or evaluate decedent's chest x-ray taken on February 25, 2000;

b.   Failed to inform defendant SPOKAS of the results and findings on decedent's chest x-ray of February 25, 2000;

c.   Failed to obtain a radiological consultation to further evaluate decedent's chest x-ray of February 25, 2000;

d.   Failed to follow up in any way with CT scans and other tests to further evaluate

EXHIBIT ____/____
PAGE 4 OF 9

decedent's chest x-ray of February 25, 2000;

e.    Failed to advise, inform, or in any way discuss with decedent, the findings on her

chest x-ray of February 25, 2000;

f.    Failed to obtain an oncological consultation in order to follow up and treat the mass

in decedent's chest

g.    Impliedly represented to decedent that her chest x-ray was normal;

h.    Failed to treat decedent's tumor;

i.    Failed to surgically remove decedent's tumor; and,

j.    Failed to advise decedent to seek further treatment and evaluation of her tumor.

6.

Defendant BOYLE was negligent in at least one of the following particulars:

a.    Failed to read or evaluate decedent's chest x-ray taken on February 25, 2000;

b.    Failed to inform defendant SPOKAS of the results and findings on decedent's chest

x-ray of February 25, 2000;

c.    Failed to obtain a radiological consultation to further evaluate decedent's chest x-

ray of February 25, 2000;

d.    Failed to follow up in any way with CT scans and other tests to further evaluate

decedent's chest x-ray of February 25, 2000;

e.    Failed to advise, inform, or in any way discuss with decedent, the findings on her

chest x-ray of February 25, 2000;

f.    Failed to obtain an oncological consultation in order to follow up and treat the mass

in decedent's chest

EXHIBIT ____ /
PAGE __5_ OF _9_

g.   Impliedly represented to decedent that her chest x-ray was normal;

h.   Failed to treat decedent's tumor;

i.   Failed to surgically remove decedent's tumor; and,

j.   Failed to advise decedent to seek further treatment and evaluation of her tumor.

7.

Defendant SPOKAS was negligent in at least one of the following particulars:

a.   Failed to read or evaluate decedent's chest x-ray taken on February 25, 2000;

b.   Failed to request the results of decedent's chest x-ray from defendants HRMC and BOYLE;

c.   Failed to obtain a radiological consultation to further evaluate decedent's chest x-ray of February 25, 2000;

d.   Failed to follow up in any way with CT scans and other tests to further evaluate decedent's chest x-ray of February 25, 2000;

e.   Failed to advise, inform, or in any way discuss with decedent, the findings on her chest x-ray of February 25, 2000;

f.   Failed to obtain an oncological consultation in order to follow up and treat the mass in decedent's chest

g.   Impliedly represented to decedent that her chest x-ray was normal;

h.   Failed to treat decedent's tumor;

i.   Failed to surgically remove decedent's tumor; and,

j.   Failed to advise decedent to seek further treatment and evaluation of her tumor.

* * *

EXHIBIT ___1___
PAGE _6_ OF _9_

8.

As a direct and proximate result of the negligence of all three defendants, combining and concurring, together with their misleading misrepresentation in impliedly representing to her that there were no abnormalities or any conditions in her chest x-ray which needed to be further evaluated. Decedent did not discover her ongoing and growing tumor until no sooner than January 2006. By that time, the tumor had almost quadrupled in size, had metastasized, decedent's condition was terminal, and she died on July 4, 2006, as a result of defendants' negligence. In addition, decedent was required to undergo more extensive chemotherapy and other treatment, and sustained diarrhea and vomiting as a direct and proximate result thereof. In addition, decedent suffered shock and mental anguish, and her injuries are permanent and progressive, all to her non-economic damage in the sum of $5,000,000.

In addition, decedent has incurred medical, funeral and burial expenses in the sum of $_____, all to his economic damage in the sum of $_____.

9.

At the time of her death, decedent left surviving a spouse and five children, each of whom has been deprived of decedent's society, love, companionship, support and services. Decedent's heirs and beneficiaries have sustained pecuniary loss, all to their damage in excess of $500,000. In addition, as alleged in Paragraph 8 above, decedent sustained conscious pain and suffering during the period between February 24, 2000, and July 4, 2006, as alleged in Paragraph 9 above. Plaintiff incurred medical, funeral and burial expenses in the sum of $_____, all to his economic damage in the sum of $_____.

* * *

Page 7 - AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL . . .

## COUNT II

## (UNDISCOVERED NEGLIGENCE WITHIN FIVE
## YEARS OF THE FILING OF THIS COMPLAINT)

10.

Plaintiff realleges Paragraphs 1 through 9 hereinabove and further alleges:

11.

All three defendants continued their negligence as hereinabove set forth, in that, in July of 2002, defendants, and each of them, received further notice of the existence and findings of the chest x-ray taken on February 25, 2000, and, again, were negligent in failing to call these findings to decedent's attention. Defendants were negligent in each of the particulars alleged in Count I, and, as a result, plaintiff sustained the damages hereinabove set forth.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, for non-economic damages in an amount to be proven at trial, for economic damages in the sum of $_____, and for his costs and disbursements incurred herein.

DATED:   September 13, 2006.

JOLLES & BERNSTEIN, P.C.

_____
Bernard Jolles, OSB #63039
of Attorneys for Plaintiff

EXHIBIT _____ /
PAGE __8__ OF __9__

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2006, I served a true and correct copy of the

foregoing AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL by the method

indicated below, and addressed to the following person(s) at the address(es) indicated:

Carl Burnham, Jr.                                    BY HAND ___
Yturi Rose LLP                                       U.S. MAIL _X_
P. O. Box "S"                                        FED.X ___
Ontario OR 97914                                     BY FAX ___

Attorneys for Defendant Hospital

Timothy J. O'Hanlon                                  BY HAND ___
Mautz Baum & O'Hanlon, LLP                           U.S. MAIL _X_
P. O. BOX 628                                        FED.X ___
Pendleton, OR 97801-0628                             BY FAX ___

Attorneys for Defendant Spokas

David C. Landis                                      BY HAND ___
Attorney at Law                                      U.S. MAIL _X_
1515 S.W. Fifth Avenue, #844                         FED.X ___
Portland OR 97201                                    BY FAX ___

Attorneys for Defendant Boyles

Dated:  September 13, 2006.

JOLLES & BERNSTEIN, P.C.


Bernard Jolles, OSB #63089
of Attorneys for Plaintiff

- CERTIFICATE OF SERVICE

# CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2007, I served a true and correct copy of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** by the method indicated below, and addressed to the following person(s) at the address(es) indicated:

| | |
|---|---|
| Carl Burnham, Jr. | BY HAND ___ |
| Yturi Rose LLP | U.S. MAIL _X_ |
| P. O. Box "S" | FED.X ___ |
| Ontario OR 97914 | BY FAX ___ |

Attorneys for Defendant Hospital

| | |
|---|---|
| Timothy J. O'Hanlon | BY HAND ___ |
| Mautz Baum & O'Hanlon, LLP | U.S. MAIL _X_ |
| P. O. BOX 628 | FED.X ___ |
| Pendleton, OR 97801-0628 | BY FAX ___ |

Attorneys for Defendant Spokas

| | |
|---|---|
| David C. Landis | BY HAND ___ |
| Attorney at Law | U.S. MAIL _X_ |
| 1515 S.W. Fifth Avenue, #844 | FED.X ___ |
| Portland OR 97201 | BY FAX ___ |

Attorneys for Defendant Boyle

Dated:   January 8, 2007.

JOLLES & BERNSTEIN, P.C.

Bernard Jolles, OSB #63039
Candice Rutter, OSB #02520
of Attorneys for Plaintiff

- CERTIFICATE OF SERVICE