**David C. Landis,** OSB 62050
**landis@dclandis.com**
1515 SW Fifth Avenue, Suite 844
Portland OR  97201-5447
(503) 224-5680 Telephone
(503) 224-5826 Facsimile
     Attorney for Defendant Boyle

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GLENN H. SONSTENG, Personal Representative of the Estate of EDNA SONSTENG, deceased,    ) ) ) ) | |
| Plaintiff,    ) ) | Case No. CV06 476 SU |
| v.    ) ) | REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT |
| THE DOMINICAN SISTERS OF ONTARIO, INC., an Oregon non-profit corporation, dba Holy Rosary Medical Center; JOSEPH J. BOYLE, M.D.; and, FRANK J. SPOKAS, M.D.,    ) ) ) ) ) ) | COMPLAINT By Defendant Boyle |
| Defendants    ) ) | |

### 1.  Introduction

Defendant Boyle has moved to dismiss the plaintiff's claim for relief for personal injury under the survival statute on the ground that the *amended complaint* fails to state a claim upon which relief can be granted for recovery of damages for personal injury.

In addition, defendant Boyle has moved to dismiss the *first* and *second counts* of the *amended complaint* on the ground that each *count* shows on its face that it is barred by the statute of limitations.

**PAGE 1**    **REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

2.       **Allegations of the *amended complaint*.**

The *first count* of the *amended complaint* alleges that on February 24, 2000, the decedent went to the Emergency Room at Holy Rosary Medical Center (HRMC) with abdominal pain and gastrointestinal symptoms.  The decedent was evaluated by defendant Boyle, who ordered, among other tests, a chest x-ray and an ultrasound.  Dr. Boyle referred decedent to defendant Spokas who diagnosed acute cholecystitis and performed a laparoscopic cholecystectomy.  The decedent was discharged from HRMC the following day.  *Paragraph 3.*

The defendants allegedly negligently failed to read and evaluate the chest x-ray, and as a result misleadingly impliedly represented to decedent that her chest x-ray was normal and had no abnormal findings.  In fact, the x-ray showed a mass, and the x-ray report recommended a CT of the chest for further evaluation.  The defendants failed to further evaluate the mass.  In January, 2006, the decedent discovered the presence of the mass, and that it was a malignant tumor.  *Paragraph 4.*

In April, 2006, the decedent filed the original complaint in this action in which she alleged a personal injury malpractice claim.  The decedent died on July 5, 2006.  In September, 2006, the personal representative of the decedent's estate, her husband, was substituted as the plaintiff, and the *amended complaint* was filed.  The *amended complaint* alleges that the decedent died as a result of the negligence of the defendants.  *Paragraphs 1, 4, and 8.*

3.       **The *amended complaint* alleges that the negligence of the defendants caused the death of the decedent.  Accordingly, it alleges a claim for relief for wrongful death.**

PAGE 2       **REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

The caption of the *amended complaint* describes the *amended complaint* as a claim for "SURVIVAL AND WRONGFUL DEATH."  Defendant Boyle has moved to dismiss the claim for relief for personal injury under the survival statute, because the *amended complaint* alleges that the negligence of the defendants caused the death of the decedent.  Plaintiff insists that the *amended complaint* alleges "alternative causes of action" under the survival statute, ORS 30.075, or the wrongful death statute, ORS 30.020.  *Plaintiff's response memorandum, page 2.* Defendant Boyle disagrees.

The pleadings reflect that the patient commenced an action which alleged a claim for relief for personal injury, and after her death, the personal representative of her estate continued the action and alleged a claim for relief for wrongful death in the *amended complaint*. The *amended complaint* simply does not allege a claim for relief for personal injury under the survival statute.

Plaintiff contends that the right to "maintain both causes of action" was "acknowledged" in *Doe v. American Red Cross*, 128 Or App 38 (1994), and *Roe v. Pierce*, 102 Or App 152, *vacated on jurisdictional grounds*, 313 Or 228 (1992).  *Plaintiff's response memorandum, page 4.*  Defendant Boyle acknowledges that the *Roe* court stated that a claim for damages for a decedent's pain and suffering can be maintained under either statute.  *Roe*, 102 Or App at 157.  However, if plaintiff represents that *Roe* or *Doe* held that the Oregon court has construed a wrongful death complaint to allege "alternative causes of action" for wrongful death under the wrongful death statute and personal injury under the survival statute, defendant Boyle disagrees.

The phrase employed by plaintiff, "alternative causes of action" is a misnomer.

**PAGE 3        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

FRCP 8(a)(2) requires that the pleading allege a "claim for relief" which alleges "a short and plain statement of the claim showing that the pleader is entitled to relief."[1]  FRCP 8(e)(1) requires that each averment "shall be simple, concise, and direct," and denounces any requirement of any technical form of pleading.  FRCP 8(e)(2) provides that a party may allege two or more statements of a claim alternately, either in one count or in separate counts.[2]

> **4.    *Roe v. Pierce* and *Doe v. American Red Cross* do not hold that a complaint which alleges a claim for relief for wrongful death under the wrongful death statute alleges an alternative claim for relief for personal injury under the survival statute.**

The question presented by plaintiff's *response memorandum* is whether the *amended complaint* alleges alternative claims for relief for personal injury under ORS 30.075 and for wrongful death under ORS 30.020.  *Roe* and *Doe* do not hold that a complaint which alleges a claim for relief for wrongful death under the wrongful death statute alleges an alternative claim for relief for personal injury under the survival statute.

In *Roe*, the patient filed a medical malpractice personal injury action in 1986.  In

---

[1]The requirement of FRCP 8(a)(2) is similar to the requirement of ORCP 18 A, which requires that a claim for relief contain a plain and concise statement of the ultimate facts constituting a claim for relief.  The Oregon court has held that ORCP 18 A demonstrates that Oregon has shifted from the traditional concept of a "cause of action" to the broader concept of a "claim for relief."  *State ex rel Gattman v. Abraham*, 302 Or 301, 310 n 6 (1986).

[2]By comparison, ORCP 16 B requires that each separate claim be separately stated, and that alternative theories of recovery within each claim be identified as separate counts.  Both sets of rules provide for permissive joinder of claims, "either as independent or as alternate claims."  FRCP 18(a); ORCP 24 A.  The Oregon rule requires that the claims joined be separately stated.  ORCP 24 C.

PAGE 4        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS
              TO DISMISS AMENDED COMPLAINT

June, 1987, the patient died as a result of the alleged malpractice, and in October, 1987, the

patient's personal representative, his wife, filed a separate wrongful death action against the same

defendants.  In August, 1988, the personal representative filed an amended complaint in the

medical malpractice action.

   A settlement was entered into, and the personal representative petitioned the

probate court for approval of the settlement.  The decedent's children from a prior marriage

objected.  The issue in the probate court was whether the amount of the settlement apportioned to

the decedent's pain and suffering was a recovery under the wrongful death statute, which would

be distributed under the laws of intestate succession pursuant to ORS 30.030(5); or whether the

settlement was a recovery under the survival statute, which would be distributed according to the

provisions of the decedent's will.  *Roe*, 102 Or App at 156.  The court held that the settlement

was a recovery under the survival statute, and thus that the proceeds of the settlement should be

distributed according to the provisions of the decedent's will.

   In so holding, the court relied on *former* ORS 30.020(3) which provided that

recovery under ORS 30.020 was reduced by any recovery under ORS 30.075.[3]  In 1995, the

legislature amended ORS 30.020 and ORS 30.075 in a manner which changes the result in *Roe*.

The 1995 legislation deleted *former* ORS 30.020(3).  Or Laws1995, ch 618, § 19.  In addition,

the 1995 legislation amended ORS 30.075 by changing the attorney fee provision of subsection

(2) to a prevailing party attorney fee provision, and adding the following:

---

[3]*Former* ORS 30.020(3) provided:  "The court shall reduce recovery under this section by
the amount of recovery, if any, buy the decedent or the decedent's personal representative under
ORS 30.075 because of the act or omission which caused the decedent's death."

**PAGE 5**   **REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS**
       **TO DISMISS AMENDED COMPLAINT**

"(3) Subsection (2) of this section does not apply to an action for damages arising out of injuries that result in death.  If an action for wrongful death under ORS 30.020 is brought, recovery of damages for disability, pain, suffering and loss of income during the period between injury to the decedent and the resulting death of the decedent may only be recovered in the wrongful death action, and the provisions of subsection (2) of this section are not applicable to the recovery."  Or Laws 1995, ch 618, §21.

Accordingly, *Roe* simply held that where a personal injury action was filed followed by a wrongful death action, and the claim was then settled, the amount of the settlement apportioned for the decedent's pain and suffering should be distributed pursuant to the survival statute, in light of the provision in *former* ORS 30.020(3) which provided that recovery under ORS 30.020 was reduced by any recovery under ORS 30.075.

In *Doe*, a hospital patient, during elective hip surgery, received a transfusion of blood provided by the American Red Cross.  In October, 1987, the patient learned that some of the blood may have been infected with HIV, and a test later that month indicated that he had contracted HIV.  The patient was diagnosed with AIDS in July, 1990.

In October, 1990, the patient learned that the Red Cross may have been negligent in providing HIV infected blood.  Later in October, 1990, the patient filed an action for personal injury against the Red Cross.  In August, 1991, the patient developed bacterial pneumonia, an opportunistic infection that is often associated with AIDS.  The patient died from the pneumonia on August 22, 1991.  In October, 1991, the patient's personal representative, his widow, filed a second amended complaint which alleged damages for wrongful death.

The defendant Red Cross moved for summary judgment on the ground that the second amended complaint was time barred.  The plaintiff argued that the limitation issue was

PAGE 6        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS
              TO DISMISS AMENDED COMPLAINT

governed by the limitation provisions contained in the wrongful death statute, ORS 30.020, as amended in 1991. The defendant contended that the limitation issue was governed by ORS 30.075, which provides that a personal injury action does not abate on the death of the injured person; and that a personal injury action may be continued by a personal representative, if it was filed by the decedent within the limitations established in ORS 12.110.[4] The defendant contended that the applicable limitation in ORS 12.110 was the medical malpractice personal injury limitation, ORS 12.110(4).

The Court of Appeals held that the second amended complaint did not commence a new action for wrongful death which was governed by the limitation provisions of ORS 30.020. Instead, the court held that the personal injury action was commenced by the patient before his death, and was continued by the personal representative after his death as a wrongful death action.[5] *Doe*, 128 Or App at 42. Thus, the court held that pursuant to the second sentence of

---

[4]ORS 30.075(1) provides: "Causes of action arising out of injuries to a person, caused by the wrongful act or omission of another, shall not abate upon the death of the injured person, and the personal representatives of the decedent may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for injury done by the same act or omission. *The action shall be commenced within the limitations established in ORS 12.110 by the injured person and continued by the personal representatives under this section, or within three years by the personal representatives if not commenced prior to death.*" (Emphasis supplied.)

[5]By way of contrast, in *Giulietti v. Oncology Associates of Oregon*, 178 Or App 260 (2001), the patient was treated with chemotherapy in 1997 and discovered the chemotherapy burn in 1997. The patient died from another cause, cancer, in April, 1999. The personal representative filed the survival action in May, 2000. The issue was whether the one-year after death limitation of ORS 12.190, or the three-year limitation of ORS 30.075(1) governed. The court held that the three-year limitation of ORS 30.075(1) applied. *Giulietti*, 178 Or App at 265-66.

PAGE 7        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT

ORS 30.075(1), the applicable limitation statute was ORS 12.110.  *Ibid.,* 128 Or App at 43.[6]  In so holding, the court characterized its holding in *Roe* as follows:

> "We have previously held that ORS 30.075 applies to the continuation of an action, initiated by the decedent, to recover damages for the injury that caused the decedent's death."  *Doe*, 128 Or App at 43 n 5, citing *Roe*, 102 Or App 152.

Neither *Doe* nor *Roe* held that a complaint which alleges a claim for relief for wrongful death under the wrongful death statute alleges an alternative claim for relief for personal injury under the survival statute.  It is submitted that the proper characterization of the pleadings to date is that the patient commenced an action which alleged a common law claim for relief for personal injury medical malpractice, and after her death, the personal representative of her estate filed an *amended complaint* which continued the action and alleged a claim for relief for wrongful death medical malpractice under the wrongful death statute.  *Doe*, 128 Or App at 42.

**5.    The alleged misleading representation was contemporaneous with the alleged negligence and goes to the gravamen of the allegations of negligence against defendant Boyle.**

Based on *Doe*, defendant Boyle now recognizes that pursuant to the limitation provision of ORS 30.075, the question of whether the *complaint* was timely filed is governed by ORS 12.110(4).  The *original complaint* was filed more than five years after the allegedly

---

[6]The court also held that the applicable limitation of ORS 12.110 was the two-year limitation of ORS 12.110(1) which is applicable to a personal injury claim, rather than ORS 12.110(4), which applies to a claim for personal injury caused by medical malpractice, because the claim did not arise from medical treatment within the meaning of ORS 12.110(4).  *Ibid.*, 128 Or App at 43-44.

**PAGE 8        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

negligent treatment.  It is submitted that the first count of the *amended complaint* fails to allege a misleading representation sufficient to toll the five-year ultimate repose period as to defendant Boyle.

A misleading representation, for the purposes of ORS 12.110(4), is a representation which misleads a patient into delaying an action based on the negligence of a physician.  *Jones v. Salem Hospital*, 93 Or App 252, 262, 264 (1988).  A careless or innocent misleading representation is sufficient.  *Duncan v. Augter*, 286 Or 723, 732 (1979); *Skuffeeda v. St. Vincent Hospital*, 77 Or App 477, 483 n 4, *rev den* 301 Or 240 (1986).  A party need not make an affirmative statement to misrepresent.  A physician has an affirmative duty to disclose the results of diagnostic tests to his patient.  *Skuffeeda*, 77 Or App at 483 n 3.  The participation by a physician in a patient's discharge from the hospital constitutes a representation that x-rays which were taken during the hospital stay showed nothing abnormal.  *Skuffeeda*, 77 Or App at 483.  A misleading representation which a physician makes regarding the unrelated negligence of another doctor does not toll the statute as to the physician's own negligent acts.  *Jones*, 93 Or App at 262.  A misleading representation can toll the statute only as to a defendant who is "responsible for the misinformation."  *Id.*, citing *Duncan*, 286 Or at 731, and *Skuffeeda*, 77 Or App at 483.

A contemporaneous misleading representation does not toll the five-year limitation "if it goes to the gravamen of the complaint," *Skuffeeda*, 77 Or App at 482, quoting *Duncan*, 286 Or at 733; *Jones*, 93 Or App at 263 n 4 (a contemporaneous representation bearing on the gravamen of a claim does not toll the statute of limitation as to the claim).  A misleading representation has no tolling effect if it simply asserts the proper performance of the medical

**PAGE 9        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

procedure which is the gravamen of the negligence claim. *Jones v. Salem Hospital*, 93 Or App

252, 262 (1988), relying on *Duncan*, 286 Or at 731. Thus, a misleading representation which is

contemporaneous with the alleged negligence does not toll the five-year limitation period if the

representation "concerns the very act whose negligent performance is the gravamen of the

complaint." *Skuffeeda*, 77 Or App at 482-83, quoting *Duncan*, 286 Or at 733.

   In *Skuffeeda*, the plaintiff had open heart surgery at the defendant hospital.

During the surgery a metal screw dropped from the surgical equipment into the surgical opening

and lodged in the pericardium next to plaintiff's heart muscle. Following the surgery, the

defendant surgeons ordered x-rays of plaintiff's chest. The defendant radiologists did the x-ray

studies, which showed the presence of the metal screw next to plaintiff's heart. *Skuffeeda*, 77 Or

App at 480.

   The court held that each doctor's participation in plaintiff's discharge from the

hospital constituted a contemporaneous misleading representation that the post-operative x-rays

showed nothing abnormal. *Skuffeeda*, 77 Or App at 483. *See Jones*, 93 Or App at 265 ("In

*Skuffeeda*, we implicitly concluded that the defendants' statements or nondisclosures through the

time of the plaintiff's discharge from the hospital were contemporaneous with the alleged

negligence in connection with the x-ray procedures.")

   The *Skuffeeda* court, applying *Duncan*, held that the misleading representation

went to the gravamen of three of the specifications of negligence.

   The allegations of negligence against the defendant surgeons were:

"1. In using surgical equipment which was faulty and
not well maintained and which could become
disassembled during surgery.

**PAGE 10  REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS
      TO DISMISS AMENDED COMPLAINT**

"2.    In failing to adequately inspect the surgical equipment after surgery to determine that all parts were present and nothing was left behind in the surgical opening.

"3.    In failing to adequately inspect and remove the metallic foreign object from Plaintiff's pericardial region after learning that all pieces were not present on the surgical equipment after removal from Plaintiff's surgical opening.

"4.    In failing to read the x-rays and/or x-ray reports which showed the presence of the metallic foreign object present in Plaintiff's pericardial region following open heart surgery.

"5.    In failing to remove the metallic foreign object or screw from Plaintiff's pericardial region promptly once learning that it was present in Plaintiff's pericardial region following the open heart surgery.

"6.    In failing to advise Plaintiff that the metal foreign object or screw was present in his pericardial region and was lodged next to his heart after they determined its presence from the post-operative x-ray studies." *Skuffeeda*, 77 Or App at 480.

The complaint alleged that the defendant radiologists were negligent:

"In failing to see that Plaintiff was advised of the fact that the x-rays disclosed that he had a metal foreign object or screw lying next to his heart following the open heart surgery." *Id.*

The court held that the misleading representation, that the post-operative x-rays showed nothing abnormal, went to the gravamen of allegations of negligence 4. and 6., that the surgeons were negligent in failing to read the x-rays or the x-ray reports, and in failing to advise plaintiff of the presence of the screw. *Skuffeeda*, 77 Or App at 483.

Similarly, the court held that the misleading representation went to the gravamen of the allegation that the defendant radiologists were negligent in failing to see that plaintiff was advised that the x-rays disclosed the existence of the screw. *Ibid.,* 77 Or App at 484.

**PAGE 11**      **REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

Accordingly, the court held that the misleading representation was contemporaneous and was not sufficient to toll the five-year limitation period of ORS 12.110(4) as to specifications of negligence 4. and 6. against the defendant surgeons and as to the specification of negligence against the defendant radiologists.

The court held that specification of negligence 5., that the defendant surgeons were negligent in failing to remove the screw from plaintiff's pericardial region promptly did not allege facts that could constitute negligence. *Skuffeeda*, 77 Or App at 484 n 5.

The court held that the misleading representation did not go to the gravamen of specifications of negligence 1., 2., and 3. against the defendant surgeons, which alleged negligence in performing the heart surgery, *i.e.*, (1) in using surgical equipment which could become disassembled during surgery; (2) in failing to adequately inspect the surgical equipment after surgery to determine that all parts were present and nothing was left behind in the surgical opening; and (3) in failing to adequately inspect and remove the screw from plaintiff's pericardial region after learning that all pieces were not present on the surgical equipment after removal from plaintiff's surgical opening. *Skuffeeda*, 77 Or App at 484.

      **a.**     **The alleged misleading representation that the x-ray was normal goes to the gravamen of the specifications of negligence against defendant Boyle.**

The *first count* of the *amended complaint* alleges that defendant Boyle ordered the chest x-ray, that the defendants failed to read or evaluate the chest x-ray, and that the defendants "impliedly represented to decedent that her chest x-ray was normal and had no abnormal findings" when in fact it showed the presence of a mass. *Paragraphs 3., 4.* and *8.* Under the

notice pleading requirements of FRCP 8(a)(1) and 8(e)(1), it will be assumed that this is the

allegation of a misleading representation within the meaning of ORS 12.110(4). *Skuffeeda*, 77

Or App at 483. Plaintiff recognizes that "it is important to consider exactly what plaintiff alleges

defendants misrepresented." *Plaintiff's response memorandum, page 8.* Plaintiff contends that

the implied misleading representation was: "We have read your x-ray and there is nothing there

that you need to know about--it is normal." *Id.*

      The allegations of negligence against defendant Boyle are:

    "a.    Failed to read or evaluate decedent's chest x-ray
taken on February 25, 2000;

    "b.    Failed to inform defendant SPOKAS of the results
and findings on decedent's chest x-ray of February
25, 2000;

    "c.    Failed to obtain a radiological consultation to
further evaluate decedent's chest x-ray of February
25, 2000;

    "d.    Failed to follow up in any way with CT scans and
other tests to further evaluate decedent's chest x-ray
of February 25, 2000;

    "e.    Failed to advise, inform, or in any way discuss with
decedent, the findings on her chest x-ray of
February 25, 2000;

    "f.    Failed to obtain an oncological consultation in order
to follow up and treat the mass in decedent's chest;

    "g.    Impliedly represented to decedent that her chest x-
ray was normal;

    "h.    Failed to treat decedent's tumor;

    "I.    Failed to surgically remove decedent's tumor; and

    "j.    Failed to advise decedent to seek further treatment
and evaluation of her tumor." *Paragraph 7.*

      It is submitted that the misleading representation goes to the gravamen of the

specifications of negligence against defendant Boyle. The alleged misleading representation is

the implied representation that the chest x-ray was normal. The specifications of negligence all

**PAGE 13      REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS
TO DISMISS AMENDED COMPLAINT**

relate to the failure to read the chest x-ray, to inform Dr. Spokas of the result of the x-ray, to inform decedent of the result of the chest x-ray, and to follow up the x-ray with other tests, consultations, and treatments.  Accord, *Skuffeeda*, 77 Or App at 483-84 (representation that post-operative x-rays showed nothing abnormal went to the gravamen of specifications of negligence that doctors were negligent in failing to read the x-rays, in failing to advise patient of the foreign object demonstrated on the x-rays, and in failing to see that plaintiff was advised that the x-rays disclosed the existence of a foreign object).

Plaintiff's argues that the misleading representation is the failure to disclose the result of the chest x-ray, and that the gravamen of the claim of negligence is the broad contention "that defendants failed to properly provide [decedent] the necessary treatment for her cancer***." *Plaintiff's response memorandum, page 10.*

The Court of Appeals recently held, in a slightly different context, that the court reviews the operative facts alleged in the claim to "discern the gravamen or predominant characteristic of the claim." *Weston v. Camp's Lumber & Building Supply, Inc.*, 205 Or App 347, 358 (2006).   It is submitted that based upon a review of the operative facts alleged in the *amended complaint*, the gravamen of the specifications of negligence is the failure to read the chest x-ray and follow-up appropriately, and that the alleged misleading representation that the chest x-ray was normal goes to the gravamen of the specifications of negligence.

Plaintiff contends that the defendants are deemed to have repeated the representation when decedent was discharged from the hospital, and that the failure to disclose the result of the x-ray at discharge was a non-contemporaneous representation.  *Plaintiff's response memorandum, pages 8, 9,* and *10.*  Plaintiff relies on *Jones* and *Skuffeeda*.  *Jones* is

**PAGE 14       REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS
                TO DISMISS AMENDED COMPLAINT**

factually distinguishable, and *Skuffeeda* holds directly contrary to plaintiff's position.

       *Jones* was a medical malpractice personal injury action on behalf of a minor which alleged negligence during the pregnancy, during the delivery by cesarean section, and during the post-delivery care. The delivery occurred on May 4, 1979. The action was commenced in October 1985. The complaint alleged that after the delivery, the defendant pediatricians, Holly and Lace, were negligent in failing to provide adequate oxygen to the infant and in failing to obtain blood samples promptly after birth for assessment of arterial blood gases.

       The complaint alleged that the pediatricians made misleading representations in that (1) they failed to disclose that diagnostic tests after birth had demonstrated plaintiff to be experiencing respiratory acidosis, (2) they failed to disclose the delay in administering adequate oxygen, and (3) they stated that developmental delay was the result of prematurity alone and would eventually resolve.

       The court held that the allegations of misleading representation in the complaint attributed to the defendant pediatricians were sufficient to withstand a motion to dismiss. The court held that the first representation did not bear on the gravamen of the alleged initial negligence, *i.e.*, failing to provide oxygen and to obtain blood samples promptly after birth to assess arterial blood gases; and that the second and third representations did go the gravamen of the negligence alleged against the pediatricians. Plaintiff contended that the representations were not contemporaneous with the alleged negligence.

       The court struggled with the definition of "contemporaneous" as used in *Duncan* and *Skuffeeda* to describe a representation which would not toll the statute. The court opined in a general sense:

**PAGE 15      REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

"[Contemporaneous] could only have been intended to distinguish between representations made in close proximity to the negligence and more remote [representations]." *Jones*, 93 Or App at 265.

The court stated:

"The more difficult question is *how* proximate to the event a representation must be to be contemporaneous. In *Duncan*, the doctor made his statement [that he had performed an incidental appendectomy in conjunction with a cholecystectomy] immediately after the operation. In *Skuffeeda,* we implicitly concluded that the defendants' statements or nondisclosures through the time of the plaintiff's discharge from the hospital were contemporaneous with the alleged negligence in connection with the x-ray procedures." *Jones*, 93 Or App at 265. (Emphasis supplied.)

The court held:

"[C]ontemporaneousness ends when the maker of the representation knows or has reason to know information which he did not have at the time of the negligently performed procedure or its immediate aftermath and which reasonably indicates that something in the performance of or related to the procedure went wrong." *Ibid.*, 93 Or App at 266.

The court held that whether there were misleading representations of the kind alleged, and whether they were contemporaneous were factual questions. *Id.*

The factual pattern in *Jones* is markedly dissimilar from the instant case. There is no holding in *Jones* which supports plaintiff's contention that the failure to disclose the result of the x-ray at discharge was a non-contemporaneous misrepresentation.

*Skuffeeda* is directly contrary to plaintiff's position. As discussed above, the *Skuffeeda* court held that the failure to disclose the result of a post-operative chest x-ray to the patient through the time of the patient's discharge from the hospital was contemporaneous with the alleged negligence. *Jones*, 93 Or App at 265*,* explaining *Skuffeeda*, 77 Or App at 483.

**PAGE 16        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

It is submitted that the alleged misleading representation goes to the gravamen of the allegations of negligence and was contemporaneous with the alleged negligence. Accordingly, the alleged misleading representation does not toll the five-year ultimate repose period of ORS 12.110(4).

> **6.     The alleged misleading representation that the chest x-ray was normal goes to the gravamen of the alleged July, 2002 negligence, but is allegedly non-contemporaneous.**

The *second count* alleges that in July, 2002, defendants received further notice of the existence and findings of the February 25, 2000 chest x-ray, and "negligently failed to call these findings to decedent's attention." *Paragraph 11.*

Assuming the truth of the allegations, the analysis leads to the same result. The ultimate repose period is five years from the date of treatment. ORS 12.110(4). The five-year period ran in February, 2005, and this action was commenced in April, 2006. *Urbick v. Suburban Medical Clinic, Inc.*, 141 Or App 452, 456 (1996), *rev den* 329 Or 287 (1999) (in the absence of a misleading representation, the five-year period is absolute). Accordingly, the alleged 2002 negligence is sufficient to withstand this motion to dismiss only if the *second count* alleges a non-contemporaneous misleading representation which does not go to the gravamen of the claim of negligence.

The alleged misleading representation is that the defendants "impliedly represented to decedent that her chest x-ray was normal and had no abnormal findings" when in fact it showed the presence of a mass (*paragraphs 3 and 4,* which are realleged in *paragraph 10*), and that in July 2002 the defendants had notice of the existence and findings of the chest x-ray.

**PAGE 17      REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

*Paragraph 11.*

The alleged negligence is the general allegation that the defendants were negligent in failing to call these findings to decedent's attention, *paragraph 11*, and the specific allegations of negligence against defendant Boyle. *Paragraph 6,* realleged in *paragraph 10*. For the purpose of this motion only it will be assumed that the *second count* alleges a viable allegation of negligence. In view of the allegation that the implied representation was made in July, 2002, when defendants knew of the findings of the chest x-ray report, the *second count* alleges a non-contemporaneous representation. *Jones*, 93 Or App at 266.

However, it is submitted that the alleged implied representation that the chest x-ray was normal goes to the gravamen of the alleged negligence, *i.e.*, failure to inform decedent of the result of the chest x-ray and to follow up the x-ray with other tests, consultations, and treatments. Accord, *Skuffeeda*, 77 Or App at 483-84. Accordingly, the alleged misleading representation, as applied to the allegations of the *second count* is also not sufficient to toll the five-year ultimate repose period.

 

_____
David C. Landis, OSB No. 62050
(503) 224-5680
Attorney for Defendant Boyle

**PAGE 18      REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT**

## CERTIFICATE OF SERVICE

I certify that I served the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS AMENDED COMPLAINT on:

Bernard Jolles                              Attorney for plaintiff
Jolles & Bernstein PC
721 SW Oak Street, 2nd Floor
Portland OR  97205-3791


Carl Burnham, Jr.
Yturri Rose, LLP                            Attorney for defendant Holy Rosary Medical
PO Box S                                    Center
Ontario OR  97914


Timothy J. O'Hanlon
Mautz Baum & O'Hanlon LLP                   Attorney for defendant Spokas
PO Box 628
Pendleton, OR  97801-0628


on February _2__, 2007:  via electronic filing.


_____
David C. Landis, OSB No. 62050
(503) 224-5680
Attorney for Defendant Boyle


[Sonsteng\replyMemoMotionDismiss.wpd]


**PAGE 19        REPLY MEMORANDUM OF DEFENDANT BOYLE IN SUPPORT OF MOTIONS
            TO DISMISS AMENDED COMPLAINT**